UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| MARK CARNEY, | : | Case No. 5:24-00004-MJC |
| | : | |
| Debtor. | : | |

# O P I N I O N

Currently pending before the Court is the Debtor's objection to a proof of claim filed by creditor 121 Financial Credit Union ("121 FCU"). In its claim, 121 FCU asserts that it holds an unsecured claim in the amount of $29,074.47 relating to a deficiency balance from an auto loan. The Debtor objects to the claim asserting that the statute of limitations bars 121 FCU from asserting a valid claim against the Debtor.

For the reasons set forth below, the Objection will be overruled, and the proof of claim will be allowed in the amount of $29,074.47.

## I. PROCEDURAL POSTURE

### A. The Bankruptcy Case

On January 2, 2024, debtor Mark Evon Carney ("Debtor") filed a voluntary Chapter 13 bankruptcy petition along with his schedules, statements, and other required documents. Dkt. # 1. On Schedule E/F, Debtor listed 121 FCU as having a disputed unsecured claim of $30,022.00. *Id.* at 22.

On the same day, Debtor also filed his Chapter 13 Plan. Dkt. # 9. The Plan contemplated monthly payments of $1,000 for 60 months for a total plan funding of $60,000. The Chapter 13

Trustee filed an objection to the Plan indicating that it was underfunded relative to the claims to be paid as it was to be a 100% payment plan. *See* Dkt. # 20.

On September 4, 2024, Debtor filed a First Amended Plan reducing the base plan funding to $55,500.00 ("Amended Plan"). Dkt. # 58. The Chapter 13 Trustee and 121 FCU filed objections to the Amended Plan. Dkt. # 66, 67. Plan confirmation is subject to the outcome of the claim objection discussed herein.

### B. 121 FCU's Proof of Claim and Debtor's Objection

On March 11, 2024, 121 FCU timely filed Proof of Claim # 12-1 in the amount of $29,074.47 ("Claim"). The Claim is listed as unsecured. Attached to the Claim are a Retail Installment Sale Contract and an Explanation of Deficiency letter relating to the financing and disposition of a 2014 Mercedes-Benz automobile. *See* Claim # 12-1.

On April 25, 2024, Debtor filed an Objection to Claim Number 12-1. Dkt. # 25. Debtor filed an Amended Objection on June 14, 2024 ("Objection"). Dkt. # 34. 121 FCU filed its response to the Objection, Dkt. # 42, and a hearing on the Objection was scheduled for August 22, 2024. The parties then attempted to resolve the matter but were unsuccessful. Prior to the hearing, the parties submitted a Joint Stipulation of Facts and Exhibits ("Stipulation"). Dkt. # 70.

The Court then held a status conference with counsel and heard argument from counsel the next day. The Court requested post-hearing briefs which have been submitted. *See* Dkt. # 76, 77. This matter is now ripe for disposition.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the United States District Court for the Middle District of

Pennsylvania dated March 11, 2016. The pending matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B). Venue is proper pursuant to 28 U.S.C. §1409(a).

This Opinion constitutes the findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters pursuant to Fed. R. Bankr. P. 9014(c).

### III. FINDINGS OF FACTS

The parties agreed to the facts relating to this matter as set forth in the Stipulation, Dkt. # 70, which is incorporated herein by reference. The Stipulation also provided for the admissibility of the relevant documents. *Id.* Based upon the Stipulation and the agreed upon documents, the Court makes the following findings of fact:

1. On May 1, 2017, Debtor and his wife Kaitlyn Carney, jointly and severally, entered into a Retail Installment Sale Contract ("Contract") as co-buyers for the purchase of a 2014 Mercedes-Benz GL-Class vehicle ("Vehicle") on credit, secured by the Vehicle ("Loan"). Stipulation, Ex. 1. The Loan and subject debt was immediately assigned to 121 FCU.

2. The Contract provided for 78 monthly payments of $834.18 beginning on May 15, 2017. *Id.*

3. Debtor and Kaitlyn Carney defaulted on the Loan by failing to timely make the payment due for August of 2018. The payment due for August of 2018 was paid on September 22, 2018.

4. Debtor defaulted on the Loan because he failed to make the regular payments after September 2018; the last time Debtor made a payment was in September 2018.

5. Debtor failed to make the regular payment due on October 15, 2018.

6. On November 29, 2018, 121 FCU sent Notice of Default letters, notifying Debtor and Kaitlyn Carney that the Loan was past due (the October and November payments were not received) and the Loan may be accelerated if Debtor failed to bring the Loan current. *Id.*, Ex. 6, 7.

7. On December 15, 2018, Debtor called 121 FCU in an attempt to obtain a further deferment of the Loan payments, which was denied by 121 FCU. On that call, Debtor agreed to surrender the Vehicle.

8. After Debtor failed to cure the payment defaults and failed to surrender the Vehicle, 121 FCU repossessed the Vehicle on December 18, 2018.

9. 121 FCU sold the Vehicle on March 5, 2019 ("Repo Sale").

10. The Repo Sale resulted in a deficiency under the Loan of $29,074.47 ("Deficiency").

11. On April 17, 2019, 121 FCU sent an Explanation of Deficiency notifying Debtor that Debtor was liable for the Deficiency and demanding payment of the Deficiency. *Id.*, Ex. 3.

12. Despite demand, Debtor failed to pay the Deficiency.

13. On May 23, 2019, 121 FCU sent a letter to Debtor notifying him that the Deficiency had been accelerated ("Acceleration Letter"). *Id.*, Ex. 2.

14. The Deficiency was accelerated on May 23, 2019. *Id.*

15. On November 21, 2023, 121 FCU filed a Complaint in Duval County, Florida seeking a judgment for the Deficiency in the case styled as *121 Financial Credit Union v. Kaitlyn Carney and Mark Carney*, No. 16-2023-CC-018507-XXXX-MA ("Florida Action"). *Id.*, Ex. 4.

4

## IV. LEGAL STANDARD FOR OBJECTION TO PROOF OF CLAIM

The standards for objecting to a proof of claim are well established. Section 502(a) provides that a proof of claim "is deemed allowed, unless a party in interest … objects." 11 U.S.C. §502(a).[1] Pursuant to Rule 3001(f), a proof of claim "executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

The Third Circuit Court of Appeals in *In re Allegheny International, Inc.*, 954 F.2d 167 (3d Cir. 1992), described the shifting burdens in proofs of claim litigation:

> [A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*Id.* at 173-74 (internal citations omitted).

In the claims allowance process, the validity and enforceability of a claim is generally determined pursuant to applicable non-bankruptcy law. *See In re Mann Realty Assocs., Inc.*, 608 B.R. 408, 416 (Bankr. M.D. Pa. 2019) (citing *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000)); *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006). Here, Debtor first argued that the Claim was not entitled to *prima facie* validity as it was beyond the four-year statute

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37.

of limitations under Pennsylvania law.[2] *See* Dkt. # 34 at ¶¶ 6-7. In its response, 121 FCU countered that the Claim is based upon Florida law, pursuant to the terms of the Loan documents, and that Pennsylvania law does not apply. *See* Dkt. # 42 at ¶¶ 20-21. The parties have subsequently agreed that the documents were executed pursuant to Florida law and that Florida law applies to this matter. *See* Stipulation. Accordingly, the Court will apply Florida law to this contact claim.

**V.     DISCUSSION**

This matter is factually straightforward. Debtor (and his non-filing spouse) entered into a car loan financing transaction and then defaulted under its terms. The Loan documents provide that Florida law applies. The parties have stipulated as to the material facts relating to the default which include, *inter alia*, the following:

1. Debtor's last payment was in September 2018.

2. Repo Sale was in March 2019 which resulted in a deficiency of $29,074.47.

3. On April 17, 2019, 121 FCU sent an Explanation of Deficiency notifying Debtor that Debtor was liable for the Deficiency and demanding payment of the Deficiency.

4. Despite demand, Debtor failed to pay the Deficiency.

5. On May 23, 2019, 121 FCU sent the Acceleration Letter.

6. The Deficiency was accelerated on May 23, 2019.

7. On November 21, 2023, 121 FCU commenced the Florida Action.

Since the material facts have been stipulated to and the parties agree that Florida law applies, the sole legal issue before the Court is to determine when did 121 FCU's cause of action

---

[2] Debtor cites to 42 Pa.C.S. § 5525 which provides that an action upon a contract must be commenced within four years.

start to accrue under Florida law. Debtor argues that the statute of limitations runs from the date of the last payment on the Claim. 121 FCU argues that under Florida law, based upon the default language contained in the Contract, the statute of limitations does not begin to run until after the creditor has accelerated the debt and notified the borrower. An analysis of the relevant Florida law follows.

### A. Applicable Florida law

In addition to the relevant facts, the parties agree that (i) Florida law governs this matter pursuant to the terms of the Loan documents, and (ii) the statute of limitations for a breach under the Loan documents is five (5) years pursuant to Fla. Stat. § 95.11(2)(b). *See* Stipulation at C.a., o., p., and q.

As the parties have stipulated, the Florida Action was commenced on November 21, 2023. This would effectively stop the running of the statute of limitations. Therefore, the Court needs to determine whether the cause of action began to accrue more than 5 years prior to November 21, 2023. In other words, did the statute of limitations start prior to November 21, 2018?

The Debtor made his last payment on September 22, 2018. Therefore, the next monthly payment would arguably be due sometime in October 2018. No further payments were made by the Debtor. The Debtor argues that this payment default "accrued" prior to November 21, 2018 and therefore is outside the applicable statute of limitations period. The Court would agree with this position but for the fact that Florida law appears to construe the statute of limitation period differently for an installment sales contract.

As 121 FCU argues, the Contract here contains an "optional acceleration clause" and the acceleration of the date starts the limitations period. *See* Dkt. # 77 at 4. The Contract states at Section 3 in relevant part:

7

Case 5:24-bk-00004-MJC   Doc 79   Filed 01/22/25   Entered 01/23/25 08:16:28   Desc
Main Document    Page 7 of 12

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once**. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

* * *

d. **We may take the vehicle from you**. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle….

121 FCU maintains that the terms of the Contract clearly indicate an "optional" acceleration clause – "If you break your promises (default), we may demand that you pay all you owe on this contract at once." Contract, ¶ 3(b). The use of the word "may", as opposed to absolute or self-executing language, makes acceleration of the debt subject to the creditor's option of when to accelerate the entire indebtedness once a default occurs. *See Snow v. Wells Fargo Bank, N.A.,* 156 So.3d 538, 541 (Fla. Dist. Ct. App. 2015) (citing cases). The Court, under applicable Florida law, agrees.

### B. The Cause of Action Accrued Upon Acceleration

Although the Debtor's payment default did occur outside of the statute of limitations period, 121 FCU did not accelerate the Loan until it sent the Acceleration Letter on May 23, 2019.[3]

---

[3] It is noted that the Repo Sale and the Explanation of Deficiency letter from 121 FCU also occurred within the 5 year statute of limitation.

8

121 FCU provided compelling Florida case law to support its position. *See* Dkt. # 68, 77. As the Florida District Court of Appeal stated in *Greene v. Bursey,* 733 So.2d 1111, 1115 (Fla. Dist. Ct. App. 1999), where an installment contract contains an optional acceleration clause, "the entire debt does not become due on the mere default of payment; rather, it becomes due when the creditor takes affirmative action to alert the debtor that he has exercised his option to accelerate." (citation omitted).

*Green* involved a default under a personal guaranty of a related commercial promissory note and mortgage. The note obligor defaulted after it made its last payment in 1987 but the creditor did not commence an action against Green, the guarantor, until 1995. Green raised a 5 year statute of limitations under § 95.11(2)(b) as an affirmative defense. The *Green* Court framed the issue before it as follows:

> Greene next argues that a fact question remained as to whether Bursey's claim was barred by the statute of limitations. He maintains that Bursey's cause of action accrued, if at all, in 1987, when Joli II defaulted under the terms of the note, and not in 1991, the final maturity date of the note, as Bursey maintains. It is undisputed that the applicable statute of limitations is section 95.11(2)(b), Florida Statutes (1997), which sets a five-year period for suits involving an action on a contract, obligation, or liability founded on a written instrument, as here. The statute of limitations begins to run from the time the cause of action accrues. § 95.031, Fla. Stat. (1997); *Bauld v. J.A. Jones Constr. Co.,* 357 So.2d 401 (Fla. 1978). A cause of action accrues when the last element constituting the cause of action occurs. § 95.031(1), Fla. Stat. (1997). Thus, the key to resolving this point on appeal is to determine whether Bursey filed his lawsuit within five years from the date his cause of action accrued.

*Id.* at 1114.

The *Greene* Court found that even though the creditor had the "option" to declare a default after the first missed payment and accelerate the debt, it did not do so. "Thus, the statute of

9

Case 5:24-bk-00004-MJC    Doc 79    Filed 01/22/25    Entered 01/23/25 08:16:28    Desc
Main Document    Page 9 of 12

limitations on the underlying note would not have commenced until it matured on April 1, 1991." *Id.* at 1115.[4]

121 FCU also relies on *Snow v. Wells Fargo Bank, N.A., supra*. In *Snow*, the subject mortgage contained an "optional" acceleration clause. 156 So.3d at 539 ("Lender at is (sic) option may require immediate payment in full…"). The borrower defaulted in October 2007 and the creditor sent a notice of default in December 2007. The *Snow* Court, however, found that the notice of default did not accelerate the indebtedness as it only indicated that the creditor "intended" to accelerate if the borrower did not cure the default. *Id.* at 542. The *Snow* Court succinctly stated:

> When the borrower defaults on a payment under a note containing an optional acceleration clause, the lender can exercise its option to accelerate all future payments, making the entire debt immediately due and payable. A cause of action on an accelerated debt accrues, and the statute of limitation commences, when the lender exercises the acceleration option and notifies the borrower of this exercise. *See Greene,* 733 So.2d at 1115; *Monte v. Tipton,* 612 So.2d 714 (Fla. 2d DCA 1993) (holding that, in a mortgage containing an optional acceleration clause, the cause of action for foreclosure did not accrue, and the statute of limitations did not begin to run, until the lender exercised her option to accelerate and demanded the total balance of principal and interest).

*Id.* at 541. Accordingly, the Court found that the statute of limitations did not begin to run until the creditor commenced an action against the borrower, which was deemed to be an acceleration, on March 12, 2008.[5] *Id.* at 542.

In his Reply Brief, Debtor makes several arguments relating to general breach of contract theories and cites to Black's Law Dictionary for the definitions of "Default" and "Breach of Contract." *See* Dkt. # 76. However, Debtor's arguments fall short and do not cite to any Florida case law that contradicts or disagrees with the statute of limitations analysis for installment

---

[4] Since the subject guaranty agreement had a "demand" requirement, the *Green* Court, in considering a request for summary judgment, found that a material question of fact remained as to whether the creditor made such demand within a reasonable time. That is not at issue here.
[5] This 2008 action was dismissed without prejudice for some reason, but the creditor filed a second action on March 5, 2013 within the 5 year statute of limitations period.

contracts under *Green* and *Snow*. The Debtor attempts to distinguish *Green* and *Snow* by pointing to the fact that those cases are mortgage foreclosure cases and instead urges the Court to follow *City of Riviera Beach v. Reed*, 987 So.2d 168 (Fla. Dist. Ct. App. 2008), which stands for the proposition that the limitations period begins to run when an action "may be brought." *Id.* at 170.[6] The Debtor, however, does not cite any authority that the analysis for a retail installment contract would be different from a mortgage foreclose action. This Court did not find any authority to distinguish any difference either. Therefore, while *City of Riviera* correctly states general contract law under Florida law, the Court is persuaded that the case law relating to installment contracts is applicable to the facts of this case.

Turning to the relevant facts *sub judice* and pursuant to the analysis of Florida law as set forth above, the Debtor's payment default under the installment loan did not trigger the accrual of the statute of limitations. Further, the Notice of Default letter likewise did not constitute an acceleration of the indebtedness. The cause of action here started to accrue when 121 FCU sent the Acceleration Letter in May 2019. Accordingly, the filing of the Florida Action within 5 years of the Acceleration Letter properly tolled the statute of limitations under § 95.11(2)(b), Florida Statutes.

---

[6] *City of Riviera* was an action by the City where the limitations period commenced when the City filed municipal liens against a property owner. In that case, the liens at issue were "enforceable in the manner provided by law for the foreclosure of mortgages on real property." *Id.*

11

## VII. CONCLUSION

For the reasons stated above, Debtor's Objection to Claim # 12-1 is overruled and Claim # 12-1 will be allowed in the amount of $29,074.47. An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: January 22, 2025